UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

```
**************************************************
Sarah T. Glover                                  *
        Plaintiff                                *
                                                 *
v.                                               *   No.  1:20-cv-358
                                                 *
Hartford Life and Accident Insurance             *
Company, and Dartmouth-Hitchcock                 *
Clinic Group Long Term Disability Plan           *
        Defendants                               *
**************************************************
```

## **COMPLAINT**

NOW COMES Sarah T. Glover, Plaintiff, by and through her attorney, Anne M. Rice, and files this Complaint against Defendants Hartford Life and Accident Insurance Company and Dartmouth-Hitchcock Clinic Group Long Term Disability Plan asserting causes of action for relief at law and equity.

I.    PARTIES

1.    The Plaintiff, Sarah T. Glover, is a resident of Hopkinton, County of Merrimack, New Hampshire, and an employee of Dartmouth-Hitchcock Clinic. Plaintiff is, and at all times relevant hereto was, a participant and beneficiary, as defined by 29 U.S.C. 1002(7) and 29 U.S.C. 1002(8) of her employer's ERISA employee welfare benefit plan, The Group Long Term Disability Plan for employees of Dartmouth-Hitchcock Clinic ("the Plan"). Plaintiff has standing to bring this action under 29 U.S.C. 1132(a).

2.    Defendant, Hartford Life and Accident Insurance Company, ("Hartford"), is a Connecticut corporation with its home office in Hartford, Connecticut. Hartford issued the group

insurance policy for the Plan and was named by the Plan as the claims fiduciary with full discretion and authority to determine Plan participants' eligibility for benefits.

3. Defendant, Dartmouth-Hitchcock Clinic Group Long Term Disability Plan, ("the Plan"), is an ERISA employee welfare benefit plan providing group long term disability, as defined by 29 U.S.C. 1002(1), for employees of the Dartmouth-Hitchcock Clinic, in Lebanon, New Hampshire. The Plan Administrator named under the Plan is the Dartmouth-Hitchcock Clinic in Lebanon, New Hampshire.

II. <u>JURISDICTION</u>

4. Plaintiff files this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1001 *et seq*. This court has jurisdiction over this action pursuant to 29 U.S.C. 1132(e)(1) and 28 U.S.C. 1331, federal question jurisdiction.

5. Plaintiff has exhausted the administrative remedies made available to her by the terms of the Plan, Hartford, and ERISA.

III. <u>VENUE</u>

6. Venue is proper in the United States District Court, District of New Hampshire pursuant to 29 U.S.C. 1132(e)(2) because the Plan is administered in New Hampshire, a substantial part of the events giving rise to Plaintiff's claim arose in New Hampshire, and one or more of the breaches of which Plaintiff complains occurred in New Hampshire. Plaintiff, Sarah T. Glover, is a resident of the Town of Hopkinton, County of Merrimack, State of New Hampshire.

IV. <u>STATEMENT OF FACTS</u>

7. The Plaintiff, Sarah T. Glover, DO, is employed as a family practice physician at Dartmouth Hitchcock Clinic ("DHC").

8. The plaintiff was hired by Dartmouth Hitchcock Clinic subject to a physician contract ("Employment Agreement") which was executed by the employer on November 28, 2011.

9. This contract between the parties detailed the terms and conditions of the employment relationship between the plaintiff and DHC.

10. Among the agreements, the contract included a description of the "duties and responsibilities of physician," compensation and fringe benefits, and specifically addressed expectations regarding plaintiff's full-time status, as well as her expected productivity performance.

11. According to the contract, the initial term of physician's 1.0 FTE employment began on or about March 5, 2012, with a gross annual base salary of $200,000.00.

12. Also, according to the contract, unless terminated earlier in accordance with the agreement, the initial term of physician's employment was for a period of two years from the effective date of the agreement (March 5, 2012) with an automatic renewal for one year terms (subject to the parties' rights to terminate as set forth in the agreement), thereafter.

13. In accordance with section 5a of the contract, after the initial term of employment, the plaintiff's salary would be determined based upon the prevailing compensation program then in effect at Dartmouth Hitchcock-Manchester, taking into consideration the physician's clinical productivity as compared to national productivity benchmarks for her specialty, or with consideration of the expectations established by her site medical director.

14. In accordance with section 5b of the employment agreement, entitled "fringe benefits," the plaintiff was entitled to receive disability benefits in accordance with the terms of the employer's plan.

15. The parties employment agreement was subject to a First Amendment dated November 23, 2011, which entitled the plaintiff to receive a "sign on bonus payment" in the amount of $10,000.00.

16. Also, by letter dated November 23, 2011 from Stephen Paris, MD, Medical Director, Dartmouth Hitchcock-Manchester, the plaintiff was notified of her requirement to "work a specified number of shifts for March 2012 to March 2013." That requirement included an agreement to participate in an equitable distribution of shifts to include day, night, weekend and holiday coverage. This letter further detailed that the plaintiff had "elected to work full-time, 160 shifts, to be paid at $1,250 per shift. Additional shifts beyond your base of 160 shifts will be paid at $1,250."

17. This letter of confirmation was signed by Dr. Steven Paris and the plaintiff.

18. On or about September 2, 2014, pursuant to a new employment agreement by and between the plaintiff and Dartmouth Hitchcock Clinic, the plaintiff was employed as a 1.00 FTE status physician at Dartmouth Hitchcock-Concord in the primary care/internal medicine department.

19. As in her previous contract with DHC, the plaintiff's FTE status and responsibilities were defined in accordance with DHC guidelines, and in accordance with the signed employment contract between the parties.

20. Section 5a of the parties' employment agreement detailed plaintiff's base salary which for the initial term of her employment, beginning on or about September 2, 2014 for a

period of two years, with automatic renewal for one year terms thereafter, entitled her to the gross annual base salary of $200,000. After her initial term of employment, the plaintiff's salary was to be determined based upon Dartmouth Hitchcock-Concord's compensation program. The employment agreement expressly indicated that "it is expected that by the end of the initial term, each physician's clinical productivity will be consistent with national productivity benchmarks, for their specialty, e.g. MGM a median for work reviews, or with the expectations established by their site medical director."

21.  In accordance with section 5b of the parties' employment agreement, the physician was entitled to receive a wide array of benefits including "disability benefits" in accordance with the terms of the employer's plan.

22.  A summary of the benefit plans in force were included on an Addendum A.

23.  As part of this employment agreement, the plaintiff was also subject to a separate non-competition agreement and provided with an amendment to the 2014 employment agreement, dated 6/19/2014 entitling the plaintiff to a sign on bonus in the amount of $20,000, as well as a "retention bonus" in the amount of $10,000, to be paid within 30 days after the completion of her first full contract year, with an additional retention bonus of $10,000 to be paid within 30 days after completion of her second full contract year.

24.  The policy for disability under which the plaintiff was entitled to receive coverage and as referenced in both her contracts of employment, was issued by Hartford Life and Accident Insurance Company of Simsbury, Connecticut, to the policyholder, Dartmouth-Hitchcock Clinic , (DHC).

25.  The policy number was GLT – 766303 with an effective date of January 1, 2008 and a policy anniversary date of January 1, 2015.

26. DHC is the plan sponsor of this employee welfare benefit plan that provides long term disability ("LTD") benefits to plan participants under the terms of a group insurance policy.

27. DHC's LTD plan is underwritten by the Defendant The Hartford's group policy number GLT766303.

28. The Plaintiff is a plan participant and beneficiary under the terms of The Hartford group policy. Her insured ID number is 9004712002.

29. The Long Term Disability Policy includes the following provisions:

    A. Pages 23 and 24 in the "Definitions" section of the policy:

> "**Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:
>
>     1) Your Occupation during the Elimination Period: and
>
>     2) Your Occupation following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Pre-disability Earnings. If at the end of the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation, but Your Current Monthly Earnings are greater than 80% of Your Pre-disability Earnings, Your Elimination Period will be extended for a total period of 12 months from the original date of Disability, or until such time as Your Current Monthly Earnings are Less than 80% of Your Pre-disability Earnings, whichever occurs first."

    B. Pages 26 and 27 in the "Definitions" section of the policy:

> "**Your Occupation** means Your Occupation as it is recognized in the general workplace, that You were routinely performing prior to becoming Disabled. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location.
> If You are a Physician, Your Occupation means the general or sub-specialty in which You are practicing for which there is a specialty or sub-specialty recognized by the American Board of Medical Specialties. If the sub-speciality in which You are practicing is not recognized by the American Board of Medical Specialties, You will he considered practicing in the general specialty category."

      C.      Page 24 in the "Definitions" section of the policy:

**"Essential Duty** means a duty that:

    1) is substantial, not incidental;

    2) is fundamental or inherent to the occupation: and

    3) cannot be reasonably omitted or changed.

Your ability to work the number of hours in your regularly scheduled work week is an Essential Duty."

30.    According to the policy language, benefit payment will stop on the date the employee is no longer disabled.

31.    According to an ERISA Information Notice regarding plan named "Group Long Term Disability Plan for employees of DARTMOUTH-HITCHCOCK CLINIC, Plan Number, LTD-501 sponsored by DHC with an Employer Identification Number of 22-2519596, the Agent for Service of Legal Process for the plan is Dartmouth Hitchcock Clinic, One Medical Center Drive Lebanon, NH 03756, and for the policy: Hartford Life and Accident Insurance Company 200 Hopmeadow Street, Simsbury, CT 06089.

32.    This same notice indicates that the benefits are provided "...under a group insurance policy (Policy) issued by the Hartford Life and Accident Insurance Company (Insurance Company) and are subject to the Policy's terms and conditions. The Policy is incorporated into, and forms a part of, the Plan. The Plan has designated and named the Insurance Company as the claims fiduciary for the benefits provided under the policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy."

33. The notice further indicates that "The Plan is administered by the Plan Administrator with benefits provided in accordance with the provisions of the applicable group plan."

34. The notice indicates that "The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy. The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy."

35. "The Insurance Company" evaluates the claim to determine if benefits are payable and any wholly or partially denied claim must be appealed to the "Insurance Company for a full and fair review."

36. When the Plaintiff was hired as a physician by DHC on or about March 5, 2012, she worked as a hospitalist in Manchester, New Hampshire. As of September 14, 2014, she began her work as a physician in outpatient care practicing in Concord, New Hampshire.

37. In these roles, Plaintiff was required to work full time, with an established minimum performance and productivity expectation to include RVUs, numbers of shifts in the form of days, nights and weekends, and patient encounters.

38. In this capacity she was engaged in a complex, detailed-oriented profession where concentration, persistence, and pace would not only be expected, but would also be of critical importance in treating patients in her practice, as would her ability to attend work reliably.

39. The Plaintiff worked in that capacity until she was taken out of full time work as of May 4, 2015 due to a disabling condition.

40. The Plaintiff's medical records in conjunction with her records of work and earnings, support a finding of disability in accordance with the terms of the Hartford Long Term Disability Policy.

41. The Plaintiff's medical records as submitted to the Hartford in support of her claim for LTD, contain object evidence in the form of lab results, brain and abdomen MRIs, biopsy and neurocognitive examinations, of her disabling conditions.

42. The Plaintiff was diagnosed with a number of conditions, which symptoms have interfered with her ability to work full time or to perform the essential duties of her position with DHC, as a physician.

43. In addition to adrenal adenoma with suspicious pathology warranting ongoing clinical follow up, she was diagnosed with Cushings, Lyme disease, Babesia, and severe chronic fatigue resulting in loss of stamina and resulting in cognitive difficulties with full time duty as a physician.

44. The Plaintiff's records also demonstrate evidence of symptoms and medical restrictions that are consistent with her diagnoses and which result in to her ability to perform her essential duties, and that also limit her to working in a part time capacity.

45. The Plaintiff's diagnoses, symptoms, restrictions and limitations are documented by numerous reputable treating physicians and are supported by their differential diagnoses, reached by means of objective findings and clinically recognized symptoms over time.

46. Based upon these findings and this treatment of their patient, Dr. Glover, and in consideration of her history, the Plaintiff's treating and qualified physicians determined she could not work full time.

47. Due to her disabling symptoms, conditions and limitations, and due to the requirement that she only work part time, her earnings fell to less than 80% of her pre-disability earnings.

48. As a result of her illness, resulting limitations and related loss of earnings, the Plaintiff applied for disability benefits through The Hartford on March 17, 2016, alleging she could no longer perform the duties of her occupation due to her illness, which consisted of Lyme disease causing severe chronic fatigue, cognitive dysfunction, adrenal tumors, Cushings disease, babesiosis, abnormal brain MRI findings and Small Fiber Neuropathy.

49. Her application was initially accepted and she was first issued short term disability benefits and then long-term disability benefits through the Hartford Policy, which is the subject of this action.

50. The Hartford paid the Plaintiff benefits between November 2, 2015, and July 4, 2017 because she was "unable to perform the Essential Duties of Your Occupation due to symptoms and impairments resulting from Lyme disease," however, the Hartford thereafter terminated all payments.

51. By Notice dated July 10, 2017, the Hartford informed the Plaintiff that her benefits were being terminated, due to the assertion that she no longer met the definition of disability as of July 4, 2017.

52. The Hartford contended that "the combined information in your file does not show that you are unable to perform the Essential Duties of Your Occupation on a full-time basis as of 07/05/17."

53. The letter further stated "We have completed our review of your claim for benefits and have determined that you do not meet the policy definition of Disability beyond 07/04/17."

-10-

"We based our decision to terminate your claim on policy language."

54.     The July 10, 2017, letter of termination also indicated that in making this decision to terminate benefits, the Plaintiff's file was referred for an Independent Physician Peer Review to help clarify if the medical information continued to support her inability to return to work on a full-time basis. This review was complete by Dr. Imad Durra.

55.     The Plaintiff disagreed with the decision and timely appealed The Hartford's termination of her LTD benefits.

56.     By letter of February 14, 2018, the Plaintiff provided additional medical evidence in the form of a neuropsychological evaluation and argued that the record demonstrated that she had been diagnosed with numerous conditions, with documented and correlating symptoms that limit her exertional abilities including psychiatric/cognitive impairment with ongoing problems with "brain fog," word finding difficulties, and inability to multi task, fatigue with documented date time somnolence; fatigue that gets worse with exertion and causes decreased cognitive function with increased cognitive impairment; disequilibrium and radicular symptoms into her arms and legs bilaterally.

57.     The Plaintiff's appeal went on to detail the objective evidence in the record of these conditions and diagnoses.

58.     The appeal also detailed her related and resulting medical restrictions and limitations which caused her to be unable to perform the essential functions of her job as a physician such that she had a 50% reduction in her earnings since the onset of her disability.

59.     The appeal pointed to the fact that the decision to terminate benefits was in error as it failed to consider all the relevant records and with respect to the records which were

considered, it failed to acknowledge or give proper weight to the evidence of disability contained therein.

60.   Specifically, the Plaintiff alleges that the Hartford failed to consider at least 20 records which were provided with the appeal. The Appeal also referenced new records for care after May 23, 2017 which were not considered but which supported her claim for disability benefits.

61.   The Hartford denied the Plaintiff's appeal by letter dated March 20, 2018 and upheld the denial and termination of benefits.

62.   The letter of denial indicated the decision to uphold the termination of benefits was made with consideration of an "Independent Medical Review" completed by Dr. Joshua Lewis. However, the Plaintiff was not provided with a copy of Dr. Lewis' review, opinion or report in advance of the Hartford issuing its 3/20/18 decision.

63.   It appears Dr. Lewis was not provided a complete copy of Dr. Glover's medical records.

64.   Moreover, even to the extent Dr. Lewis did receive the missing and new medical records relevant to this claim, based on his conclusion that "the medical records do not identify objective functional deficits or any supportive evidence to warrant restrictions," it is apparent he failed to consider the records.

65.   Dr. Lewis stated the Plaintiff would be able to perform work activities 40 hours per week and made no reference to the claimant's recent and newly submitted neurocognitive exam and findings, instead only referencing an older less complete report.

66.   Further, while the medical records included numerous examples of objective evidence of the Plaintiff's conditions and diagnoses, with resulting symptoms of fatigue and lack

of stamina for full time work, Dr. Lewis gave no credit to the Plaintiff's treating physician's diagnoses of conditions requiring part time work, or to the finding that such part time work was required to limit cognitive deficits.

67. Dr. Lewis' report and findings only considered the Plaintiff's physical and postural limitations without consideration or explanation for his lack of consideration as to her deficits with respect to stamina, fatigue and declining cognitive function resulting therefrom.

68. The letter of denial indicated that "our claim decision is now final as administrative remedies available under the Policy have been exhausted."

69. The Plan named The Hartford as the sole and exclusive adjudicator of claims appeal under 29 U.S.C. §1133(2), ERISA § 503(2).

70. The Plan did not and does not permit The Hartford's denial of disability benefits claims to be appealed to any other tribunal.

71. The Plan is not self-funded. Benefits payments necessarily have to come out of The Hartford's own funds.

72. The Plaintiff alleges the decision is in error and represents a violation of law resulting in the improper denial of LTD benefits to which she is entitled.

V. <u>CLAIMS FOR RELIEF</u>

**COUNT I**
**FAILURE TO PROVIDE A FULL AND FAIR REVIEW OF CLAIM**
[Denial of right to a fair and full review pursuant to
ERISA 29 U.S.C. 1133 and ERISA 29 C.F.R 2560.503-1(h)]

73. The Plaintiff hereby repeats, realleges and incorporates each of the paragraphs above as if fully set forth herein.

74. The Defendants failed to provide Plaintiff an opportunity to respond to new evidence prior to issuing an adverse disability benefits determination on appeal thus denying Plaintiff a full and fair review of her claim pursuant to ERISA 29 U.S.C. 1133 and ERISA 29 C.F.R 2560.503-1(h).

75. Defendants' failure to provide an opportunity to Plaintiff to respond to new evidence prejudiced her claim and resulted in an unreasonable and unlawful denial of disability benefits.

76. Defendant's termination of Plaintiff's benefits was arbitrary and capricious, an abuse of discretion, and a violation of the terms of the policy.

77. An actual controversy has arisen and now exists between Plaintiff and Defendant with respect to whether Plaintiff is entitled to LTD benefits under the Policy.

78. Plaintiff contends and Defendant disputes, that Plaintiff is entitled to LTD benefits under the terms of the Policy because Plaintiff contends and Defendant disputes, that Plaintiff is totally disabled.

79. Plaintiff deserves a judicial determination of her rights and a declaration as to which party's contention is correct, together with a declaration that Defendant is obligated to pay long term disability benefits under the terms of the Policy, retroactive to the first day her benefits were terminated, until and unless such time that Plaintiff is no longer eligible for such benefits under the terms of the Policy.

80. A judicial determination of these issues is necessary and appropriate at this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

81.     As a direct and proximate result of Defendant's wrongful conduct and breach as described herein, the Plaintiff has lost the principal and the use of her rightful disability benefits and suffered other damages as described herein.

82.     As a proximate result of Defendant's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which she is entitled under the terms of The Policy.

## COUNT II
## UNLAWFUL DENIAL OF BENEFITS
## DUE UNDER 29 U.S.C. 1132(a)(1)(B)

83.     The Plaintiff hereby repeats, realleges and incorporates each of the paragraphs above as if fully set forth herein.

84.     In accordance with 29 U.S.C. 1132, and under the terms of the Plan, Plaintiff is entitled to receive, as a participant and beneficiary of the Plan, LTD benefits based upon her disabled status.

85.     The Defendants have refused to provide Plaintiff with her disability benefits and are, therefore, in breach of the terms of the Plan and ERISA.

86.     The Defendants unreasonably and unlawfully denied Plaintiff's disability benefits in part by: (1) failing to address [ignoring] substantial evidence supporting Plaintiff's claim for LTD benefits; (2) dismissing without explanation substantial evidence supporting Plaintiff's claim for LTD benefits; (3) failing to provide its independent medical expert with all of the relevant evidence; (4) failing to support its adverse benefit decision with reasonable and substantial evidence; and (5) Placement of undue weight on certain evidence adverse to Plaintiff's claim and mischaracterization of evidence to support an adverse benefit determination.

87. The Defendant, Hartford, is an insurance company acting as both claims administrator and claims fiduciary to the Plaintiff and the Plan. The Plan is not self-funded and the Hartford is liable for benefit payments due to Plaintiff through its own funds and assets. As such, Hartford suffers from an inherent structural conflict of interest as both insurer and fiduciary and its factual findings and conclusions in denying Plaintiff's claims are to be examined with this structural conflict in mind.

88. The Plaintiff is entitled to *de novo* review of her claims to the extent allowed by law as the Defendant's decision to deny Plaintiff's long term benefits claim under the Plan was not reasonable or supported by substantial evidence and was arbitrary, capricious and an abuse of discretion.

89. The Defendants actions constitute an unreasonable and unlawful denial of disability benefits under ERISA as provided in 29 U.S.C. 1132(a)(1)(B).

90. Plaintiff is entitled to LTD benefits under the Plan retroactive to the date benefits were applied for and continuing until Plaintiff attains the age of 67 years or until it is determined that Plaintiff is no longer eligible for benefits under the terms of the Plan.

91. As a result of the Defendant's actions and inactions as described herein, the Plaintiff was wrongfully denied benefits to which she was entitled in violation of 29 U.S.C. 1132(a)(1)(B).

92. As a direct and proximate result of Defendant's wrongful conduct and breach as described herein, the Plaintiff has lost the principal and the use of her rightful disability benefits and suffered other damages as described herein.

93. Plaintiff is entitled to payment of her long term disability benefits under the terms of the Policy, retroactive to the first day her benefits were terminated, until and unless such time

that Plaintiff is no longer eligible for such benefits under the terms of the Policy as well as other remedies for damages described herein.

94. Plaintiff is further entitled to interest on all past due amounts pursuant to ERISA 29 U.S.C. 1132(a)(1)(B).

## COUNT III
## ATTORNEYS FEES AND COSTS

95. The Plaintiff hereby repeats, realleges and incorporates each of the paragraphs above as if fully set forth herein.

96. Plaintiff has retained counsel to represent her in this matter, and is entitled to an award of costs, including reasonable attorney's fees pursuant to ERISA 29 U.S.C. 1132(g)(1).

**WHEREFORE**, the Plaintiff respectfully prays judgement as follows:

A. For declaratory judgement against Defendants, requiring Defendants to pay long-term disability benefits under the terms of the Plan to Plaintiff retroactive to the first day her benefits were breached and for the ongoing period under the terms of The Policy, with prejudgement interest on all unpaid benefits, until Plaintiff attains the age of 67 years or until it is determined that Plaintiff is no longer eligible for benefits under the terms of the Plan;

B. For reasonable attorneys fees pursuant to statute;

C. For costs of suit incurred; and

D. For such other and further relief as the Court deems just and proper.

                                        Respectfully submitted,

                                        Sarah T. Glover

                                        By her attorneys

                                        RICE LAW OFFICE, PLLC

Date: <u>March 19, 2020</u>                      <u>/s/ Anne M. Rioc</u>
                                        Anne M. Rice (Bar No. 12992)
                                        486 Union Avenue
                                        Laconia, NH 03246
                                        (603) 528-5299
                                        arice@ricelaw-office.com