UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Sarah T. Glover

      v.

Civil No. 20-cv-358-LM
Opinion No. 2022 DNH 089 P

Hartford Life and Accident Insurance Company

**O R D E R**

Plaintiff Sarah Glover brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., seeking a declaration that defendant Hartford Life and Accident Insurance Company improperly denied her disability benefits. After Glover filed her lawsuit, Hartford Life agreed to review its denial of benefits, determined Glover was entitled to disability benefits, and agreed to pay her back benefits from July 2017 to the date of settlement. Glover now moves for attorney fees and costs under 29 U.S.C. § 1132(g)(1). Doc. no. 19. Hartford Life objects. For the following reasons, the court grants Glover's motion for attorney fees and costs but reduces the amount Glover requests.

**BACKGROUND**[1]

Glover is a primary care physician at Dartmouth-Hitchcock Clinic, where she started working in March 2012. Glover participates in a Group Long Term

---

[1] The court draws the following facts from the complaint, the answer, Glover's ERISA claim file, and the parties' briefs on the motion for attorney fees and attachments. The facts appear to be undisputed.

Disability Plan (the "Plan") maintained by Dartmouth-Hitchcock.  Hartford Life is the Plan's administrator and, as its fiduciary, maintains the authority to determine participants' eligibility for disability benefits.  The Plan requires Hartford Life to provide disability benefits to participants if they meet the Plan's criteria, including if a disability prevents them from working full-time.

In the summer of 2015, Glover began working part-time after she started to experience extreme fatigue and cognitive deficiencies that interfered with her ability to work full-time as a physician.  Glover has continued to experience these symptoms, at varying degrees of severity, since that summer.  Glover has worked part-time since the onset of her symptoms, seeing patients in the morning and taking naps or otherwise resting during the afternoon.  Glover first applied for disability benefits in March 2016, seeking benefits from November 2015.

In spring 2016, Hartford Life determined that Glover was entitled to disability benefits because she could not work full-time as a physician.  By early 2017, however, Hartford Life began to reassess Glover's eligibility for disability benefits and retained Dr. Imad Durra to conduct a review of Glover's medical records.  In June 2017, Dr. Durra reported that he found no objective evidence that Glover suffered from cognitive impairments that would prevent her from working full-time as a physician.  Relying on Dr. Durra's report, Hartford Life terminated Glover's disability benefits as of July 4, 2017.

In January 2018, Glover appealed Hartford Life's decision through the Plan's administrative appeal process.  Hartford Life retained a new expert, Dr. Joshua

Lewis, to independently review Glover's medical records, including new records since Dr. Durra's initial report. Like Dr. Durra, Dr. Lewis concluded that Glover did not suffer from any disabilities that would prevent her from working full-time as a primary care physician. In March 2018, Hartford Life, relying on Dr. Lewis's report, affirmed its decision to deny Glover disability benefits. In a notice informing Glover of its decision, Hartford Life stated that Glover had exhausted her administrative remedies, that its decision was now final, and that Glover's sole remedy was to file suit in federal court.

Glover brought suit in this court in March 2020, alleging that Hartford Life improperly denied her benefits under ERISA. She asserted three claims: (1) Hartford Life failed to provide her a full and fair review of her claim under 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(h) because it did not provide her with a copy of Dr. Lewis's report or allow her to respond to the report prior to denying her appeal; (2) Hartford Life erroneously concluded that her medical records did not demonstrate she was disabled and thus improperly denied her disability benefits under 29 U.S.C. § 1132(a)(1)(B); and (3) she was entitled to attorney fees and costs under 29 U.S.C. § 1132(g)(1).

Almost immediately after Glover filed suit, the parties began negotiating a possible settlement. On May 28, 2020, Hartford Life offered a "remand" of the case to allow Hartford Life to make a new determination about Glover's eligibility for disability benefits, including by considering Glover's updated medical records. The parties, however, disputed whether Glover would be entitled to attorney fees if they

resolved the case during the remand.  The parties failed to resolve their

disagreement over attorney fees.  Nonetheless, on September 21, 2020, the parties

filed a joint motion to stay Glover's action against Hartford Life pending a remand

of her claim.  Per the stipulation, Hartford Life agreed to reconsider Glover's

benefits claim in accordance with its May 2020 offer.

Hartford Life commissioned two doctors, Drs. Gabriel Jasso and Benjamin

Kretzmann, to conduct separate, independent reviews of Glover's medical file.  In

his report, Dr. Jasso concluded that there was no indication Glover suffered from

cognitive impairments that would prevent her from working full-time as a

physician.

Dr. Kretzmann concluded, however, that the medical records showed that

Glover was functionally impaired and unable to work more than part-time as a

doctor.  Dr. Kretzmann noted that, although Glover's symptoms waxed and waned,

her medical records demonstrated that she had consistently suffered from cognitive

impairments and extreme fatigue since 2015.  Dr. Kretzmann further noted that

Glover's more recent medical records showed that she continued to suffer from these

symptoms.  Dr. Kretzmann opined that Glover suffered from functional restrictions

or limitations on her ability to work full-time as a physician from July 4, 2017,

through the date of his report.

In February 2021, after receiving these reports and conducting a job

requirement review for Glover's position, Hartford Life determined that the

information currently in Glover's file indicated that she was entitled to disability

benefits under the Plan from July 4, 2017, forward.  Pursuant to this conclusion, Hartford Life provided Glover $174,597.14 in back benefits.  Hartford Life's determination mooted Glover's substantive ERISA claims, but the parties continue to dispute whether Glover is entitled to attorney fees.

## DISCUSSION

The sole issue before the court is whether Glover is entitled to attorney fees and costs under ERISA.  Participants of plans covered under ERISA may bring civil suits to recover wrongfully-denied benefits.  29 U.S.C. § 1132(a)(1)(B).  Section 1132(g)(1) provides district courts discretion to award either party reasonable attorney fees and costs in any action brought under § 1132(a).

Determining whether to award a plaintiff attorney fees and costs under § 1132(g) requires a three-step inquiry.  See Gross v. Sun Life Assur. Co. of Canada 763 F.3d 73, 76-86 (2014).  First, the court must determine whether the plaintiff has met an initial eligibility threshold by achieving "some degree of success on the merits" of her action.  Id. at 76.  Second, if the plaintiff has achieved "some degree of success on the merits," the court must determine whether the plaintiff is entitled to an award under the particular facts of the case using a five-factor balancing test. Id. at 82-83.  Finally, if the court determines an award of attorney fees is appropriate, the court must calculate the reasonable amount of fees under the lodestar standard.  Id. at 86.  The court discusses each step of the inquiry below.

I.    <u>Initial Eligibility</u>

Under the first step, the court asks whether the plaintiff has achieved "some degree of success on the merits" of her lawsuit.  <u>Id.</u> at 76.  Glover argues that she has met this threshold because Hartford Life provided all the relief she sought in her complaint.  In response, Hartford Life argues a plaintiff is not entitled to attorney fees under § 1132(g)(1) where she only obtains relief through settlement.

Section 1132(g)(1) states that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  While district courts have discretion to award reasonable attorney fees and costs to either party in an ERISA action, this discretion is not unlimited.  <u>Hardt v. Reliance Standard Life Ins. Co.</u>, 560 U.S. 242, 254-55 (2010).  The "some degree of success on the merits" standard does not require the party to be the "prevailing party," i.e., the plaintiff need not obtain judgment or a consent decree in her favor.  <u>Id.</u> at 255.  It does require, however, that the party achieve more than "trivial success on the merits" or a "purely procedural victory."  <u>Id.</u> (brackets omitted).  A party satisfies the standard if the district court "can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue."  <u>Id.</u> (quotations and brackets omitted).

Here, the question is whether a plaintiff is entitled to attorney fees under this standard when they obtain relief through a voluntary settlement with the defendant.  The court answers this question in the affirmative.  The Supreme Court

has not addressed this issue under ERISA and § 1132(g)(1).  However, in <u>Hardt</u>, the
Supreme Court stated that <u>Ruckelshaus v. Sierra Club</u>, 463 U.S. 680 (1983), "lays
down the proper markers to guide a court in exercising the discretion that
§ 1132(g)(1) grants."  <u>Hardt</u>, 560 U.S. at 255.  In <u>Ruckelshaus</u>, the Supreme Court
addressed district courts' discretion for awarding fees under the Clean Air Act,
which permits district courts to award attorney fees "whenever the court
determines that such an award is appropriate."  <u>Ruckelshaus</u>, 463 U.S. at 681-82
(quoting 42 U.S.C. § 7607(f), brackets and quotations omitted).  The Supreme Court
held that while the attorney fees language granted district courts significant
discretion, that discretion was not unlimited, and that plaintiffs had to achieve
"some degree of success on the merits" to be eligible.  <u>Id.</u> at 694.  In laying out this
standard, the Supreme Court acknowledged that the legislative history showed that
Congress expressly intended the "whenever . . . appropriate" language authorizing
attorney fees in the Clean Air Act to apply when the plaintiff's lawsuit caused
voluntary changes in the defendant's behavior "without a formal court order."  <u>Id.</u> at
686 n.8.

      Relying on <u>Ruckelshaus</u>, circuit courts have held that where statutes use the
"whenever . . . appropriate" language to allow district courts to award attorney fees,
a plaintiff need not obtain a formal court order to receive fees.  Rather, she can
obtain fees when her lawsuit caused the defendant to voluntarily change its
behavior, applying the so-called "catalyst theory."  <u>See</u> <u>Ohio River Valley Envt'l</u>
<u>Coal., Inc. v. Green Valley Coal, Co.</u>, 511 F.3d 407, 414-15 (4th Cir. 2007); <u>Sierra</u>

Club v. EPA, 322 F.3d 718, 725-26 (D.C. Cir. 2004).  The Second and Third Circuits

have specifically held that the catalyst theory applies in ERISA cases.  This is so,

according to both circuits, because the language in § 1132(g)(1) granting district

courts discretion to award fees is analogous to the language in the Clean Air Act,

and the Supreme Court in Hardt stated that the standard for awarding fees under §

1132(g)(1) was laid out in Ruckelshaus.  See Templin v. Indep. Blue Cross, 785 F.3d

861, 865-66 (3d Cir. 2015); Scarangella v. Grp. Health, Inc., 731 F.3d 146, 154-55

(2d Cir. 2013).  The court finds the reasoning of these courts persuasive and

concludes that a plaintiff may be entitled to attorney fees under § 1132(g)(1) when

her lawsuit causes the defendant to voluntarily change its behavior.

Accordingly, the court must determine whether Glover is entitled to attorney

fees under the catalyst theory.  To be entitled to fees under the catalyst theory,

plaintiffs must show three things: (1) that the lawsuit caused the defendant to

voluntarily change its conduct; (2) that the defendant's change in conduct was not

gratuitous; and (3) that the plaintiff obtained substantial relief.  See Williams v.

Hanover Hous. Auth., 113 F.3d 1294, 1299 (1st Cir. 1997); Pearson v. Fair, 980 F.2d

37, 44 (1st Cir. 1992); Nadeau v. Helgemoe, 581 F.2d 275, 281 (1st Cir. 1978); see

also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res., 532

U.S. 598, 627-28 (2001) (Ginsburg, J., dissenting) (synthesizing circuit courts'

standards for the catalyst theory); Sierra Club, 322 F.3d at 726-27.[2]  The third

_____

[2] The First Circuit has historically used the catalyst theory to determine
whether plaintiffs were entitled to attorney fees under statutes that limited fees to

element comports with <u>Hardt</u>'s requirement that the plaintiff obtain "some degree of success on the merits" that is more than trivial or procedural.  <u>Hardt</u>, 560 U.S. at 255.  The court will consider whether Glover has satisfied each element in turn.

The court looks first at causation.  <u>Pearson</u>, 980 F.2d at 44; <u>Buckhannon</u>, 532 U.S. at 628.  To show causation under the catalyst theory, "plaintiffs must show that their lawsuit was a necessary and important factor in achieving" a successful settlement in their favor.  <u>Pearson</u>, 980 F.2d at 44 (quotations omitted).  Here, Glover has made that showing.  In July 2017, Hartford Life determined Glover was ineligible for disability benefits.  Glover appealed this decision to Hartford Life, and Hartford Life again affirmed its denial.  In its denial of Glover's appeal, Hartford Life stated that its decision was final, that there were no additional administrative remedies available to Glover, and that her sole remedy under ERISA was to bring an action in federal court.  In other words, Hartford Life communicated it would provide disability benefits to Glover only if she filed a successful lawsuit in federal court.  At no point in the two years between Hartford Life's denial of her benefits

---

"prevailing parties," and <u>Pearson</u>, <u>Williams</u>, and <u>Nadeau</u> addressed prevailing party statutes.  In <u>Buckhannon</u>, the Supreme Court held that to be a prevailing party, an individual must either obtain a judgment on the merits or the entry of a consent decree in their favor, and thus disallowed the use of the catalyst theory in statutes that limit fees to prevailing parties.  532 U.S. at 610.  <u>Pearson</u>, <u>Williams</u>, and <u>Nadeau</u> have thus been abrogated to the extent they applied the catalyst theory to prevailing party statutes.  <u>Richardson v. Miller</u>, 279 F.3d 1, 4 (1st Cir. 2002).  However, attorney fees under ERISA are not limited to "prevailing parties," and thus <u>Buckhannon</u> does not preclude the use of the catalyst theory to determine attorney fees in this case.  <u>See</u> <u>Templin</u>, 785 F.3d at 865-66; <u>Scarangella</u>, 731 F.3d at 154-55.

and the date she filed this lawsuit did Hartford Life indicate it might reconsider its decision and award Glover the benefits it denied her.

Almost immediately after Glover filed suit, Hartford Life began negotiations to settle the suit and agreed to a remand of the case to reconsider Glover's eligibility for benefits—and further agreed to review Glover's post-denial medical records. After reviewing her medical file, one of Hartford Life's newly retained medical experts concluded that Glover was disabled and had been disabled from July 4, 2017 through the date of his report. Hartford Life thus reconsidered its decision, adopted the new expert's assessment, and awarded Glover back benefits of almost $175,000. It is undisputed that Glover would not have received these benefits had she not filed this lawsuit. Under these circumstances, the court finds that Glover's lawsuit caused Hartford Life to reconsider her application for benefits and provide her the relief sought. See Sierra Club, 322 F.3d at 727 (noting that the temporal sequence of plaintiff's litigation followed by defendant's remedial activity is strong evidence of a causal relationship).

The next element is whether the relief was "gratuitous." Nadeau, 581 F.2d at 281. A defendant's change in behavior may be gratuitous if the defendant was not compelled to make the change by the threat the plaintiff's lawsuit would be successful, but by the desire to avoid the expense of litigation. Id.; Buckhannon, 532 U.S. at 628. To determine whether a defendant's actions were gratuitous, courts look to whether the plaintiff brought colorable claims, or whether the claims were "frivolous, unreasonable, or groundless." Nadeau, 581 F.2d at 281; see also

Buckhannon, 532 U.S. at 627.  This element serves to prevent plaintiffs from recovering attorney fees after bringing nuisance suits.  See Tyler v. Corner Constr. Corp., Inc., 167 F.3d 1202, 1206 (8th Cir. 1999).

In this case, Hartford Life argues that its actions were gratuitous because Glover's claims were meritless and that it nonetheless offered to review her application for benefits and consider new medical records to avoid litigation and fulfill its obligations as the Plan's fiduciary.  The court disagrees.  Glover brought a claim under 29 U.S.C. § 1132(a)(1)(B), alleging that Hartford Life failed to consider all of the available medical records and erroneously determined that her medical records as of July 2017 did not establish that she was disabled.  To prevail on her claim, she would have had to show that Hartford Life's determination was arbitrary, capricious, or an abuse of discretion.  See Gross, 734 F.3d 1, 11 (1st Cir. 2013).[3]  The court has not assessed the merits of Glover's claim, and she may have been unable to ultimately show that Hartford Life's determination was an abuse of its discretion.  However, the complaint lays out a coherent claim, and there is

---

[3] The standard of review in an ERISA action depends on the level of discretion the particular plan affords the administrator.  See Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008) (explaining that decisions are subject to a de novo standard unless the plan affords the administrator discretion in making benefits determinations, in which case the abuse of discretion standard applies).  Hartford Life argues that the abuse of discretion standard would have applied to Glover's claims.  Although she did not address the issue in her motion for attorney fees, Glover asserted in her complaint that the court should apply a de novo standard of review. The court does not need to resolve this issue to rule on the instant motion, however, because the court concludes that Glover would be eligible for attorney fees under the facts of this case even if her claims were subject to the higher standard of review. Accordingly, for the purposes of this order, the court assumes without deciding that the abuse of discretion standard would have applied in this case.

nothing on its face indicating that it was frivolous, unreasonable, or groundless.  In addition, the record contains substantial evidence that Glover's numerous medical providers believed she was disabled in July 2017.  Moreover, at least one of Hartford Life's reviewing doctors, Dr. Kretzmann, found that the evidence in the record showed she was disabled at the time Hartford Life denied her benefits.  Therefore, while the court makes no conclusions as to whether Glover would ultimately have been successful, her claim was at least colorable.

Finally, the court must consider whether Glover achieved some success on the merits that was more than trivial or procedural.  Hardt, 560 U.S. at 255; Pearson, 980 F.2d at 44.  A party shows success on the merits when she obtains the relief sought in her complaint.  Templin, 785 F.3d at 867.  Glover meets that requirement here because she received the relief she requested in her complaint: a determination that she was disabled from July 2017 and a substantial sum in back benefits.  Her success was more than trivial or procedural.

Accordingly, Glover has shown that she brought a colorable lawsuit that caused Hartford Life to provide her all the relief she sought in her complaint.  In these circumstances, the court "can fairly call the outcome of the litigation some success on the merits," and Glover has therefore met the eligibility threshold for attorney fees under § 1132(g)(1).  See Templin, 785 F.3d at 867 (holding that plaintiffs achieved some degree of success on the merits where they sought interest on their ERISA benefits at a particular rate and the defendant voluntarily agreed to pay the amount claimed); Broadbent v. Citigroup Long Term Disability Plan, No.

CIV 13-4081-LLP, 2015 WL 1189565, at *4 (D.S.D. Mar. 16, 2015) (finding plaintiff had achieved some success on the merits where plan administrator denied disability benefits, plaintiff filed suit, the parties almost immediately entered mediation, and the administrator agreed to provide plaintiff benefits to settle the case).

Hartford Life, citing Scarangella, argues that Glover cannot recover these fees because the court did not take any action in this case that spurred the parties' settlement. The court disagrees. It is true that, in Scarangella, the Second Circuit held that to recover fees in an ERISA case under the catalyst theory, a plaintiff must ordinarily show that "judicial action in some way spurred one party to provide another with relief . . . ." 731 F.3d at 155. However, this requirement stems from the Second Circuit's specific formulation of the catalyst theory, which requires some action by a court. Id. But other circuits, including the First Circuit, have not required court action to invoke the catalyst theory. They only require the plaintiff to bring a colorable lawsuit that compels the defendant to change its behavior. See Williams, 113 F.3d at 1299; Pearson, 980 F.2d at 44; Nadeau, 581 F.2d at 281; see also Buckhannon, 532 U.S. at 627-28; Templin, 785 F.3d at 866. Moreover, as the Third Circuit noted in Templin, there is nothing in Hardt that requires a plaintiff's success to be the result of a judicial decision. Templin, 785 F.3d at 866. Accordingly, the fact that the court never addressed the merits of Glover's claims does not preclude attorney fees in this case.

In sum, Glover has achieved "some degree of success on the merits" and she is therefore eligible for attorney fees.

I.    Balancing test

Having determined that Glover <u>can</u> receive benefits, the second step in the inquiry is to determine whether she <u>should</u> receive them under the particular facts of this case.  <u>Gross,</u> 763 F.3d at 82-83.  The court considers five factors in making this determination:

> (1) the degree of culpability or bad faith attributable to the losing party;
>
> (2) the depth of the losing party's pocket, i.e., his or her capacity to pay an award;
>
> (3) the extent (if at all) to which such an award would deter other persons acting under similar circumstances;
>
> (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and
>
> (5) the relative merit of the parties' positions.

<u>Id.</u> at 83.  "The list is exemplary rather than exclusive, and indeed, not every factor in the list must be considered in every case."  <u>Id.</u> (quotations and citations omitted).  No single factor is decisive.  <u>Id.</u>  The court considers each factor in turn.


A.    Bad faith or culpability

The first factor looks at whether the plan administrator acted in bad faith in denying the claim or is sufficiently culpable for a mistake in handling the claim.  <u>Id.</u> This factor does not require that the administrator have acted with an "especially high degree of culpability," and may weigh in favor of attorney fees if the plan

administrator did not make a "bona fide effort to determine" whether the claimant was disabled under the plan.  See id.

Glover argues that the first factor weighs in favor of attorney fees because one of her substantive ERISA claims was that Hartford Life failed to consider all the medical records available and improperly weighed the evidence it did consider. Glover contends that this allegation was vindicated because Hartford Life ultimately determined she was impaired based on the records.  Glover maintains that this result shows that Hartford Life failed to properly weigh the evidence in the record and thus failed to review her claim in good faith.

The court disagrees.  Because the parties resolved their case on remand, the court has not ruled on Glover's contention that Hartford Life's initial decision to deny her disability benefits was unreasonable.  It would be inappropriate to do so now for the sole purpose of determining Glover's eligibility for attorney fees.  See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.").[4]

In short, the record before the court does not indicate that Hartford Life acted improperly or in bad faith in reviewing Glover's claim.  This factor does not weigh in favor of attorney fees.

---

[4] Likewise, although Glover alleged that Hartford Life violated 29 C.F.R. 2560.503-h(1) by failing to provide an opportunity to respond to Dr. Lewis's report prior to denying her appeal, she acknowledges that the parties did not litigate this point in this action.  As such, the court will not resolve this issue now solely to determine entitlement to attorney fees.  See Hensley, 461 U.S. at 437.

B.  Ability to satisfy an award of attorney fees

Hartford Life acknowledges that it could afford to pay Glover's attorney fees. This factor thus weighs in favor of an award.  However, it is of "little weight" because "the capacity to pay, by itself, does not justify an award."  See Gross, 763 F.3d at 84 (quotations omitted).

C.  Deterrence

Next, the court looks at deterrence.  Id.  Because there is no indication that Hartford Life acted in bad faith, there is no inappropriate activity to deter. Accordingly, the court finds this factor does not weigh in favor of attorney fees.

D.     Benefit to others

Fourth, the court considers whether Glover's lawsuit will provide a benefit to others.  Id. at 83.  While Glover has successfully obtained benefits, her success was related to the facts of her case—i.e., Hartford Life has determined that she qualifies for benefits based on her medical records.  This case did not result in any change in the law or an interpretation of the Plan that will impact other beneficiaries. Accordingly, this factor does not weigh in favor of attorney fees.

E.     Relative merits

Finally, the court looks at the relative merits of the parties' positions.  Id.
The "relative merits of the parties' positions, is, in the final analysis, the result
obtained by the plaintiff."  Smith v. CMTA-IAM Pension Tr., 746 F.2d 587, 590 (9th
Cir. 1984) (noting that this factor weighs in favor of an award of attorney fees where
the parties settle if the plaintiff received the results he sought in his action).  As
noted above, Glover received everything she sought in this lawsuit, including almost
$175,000 in back benefits and ongoing entitlement to benefits.  This factor weighs
heavily in favor of awarding attorney fees.

F.     Balancing test

Balancing the five factors together, the court finds they weigh in favor of an
award of attorney fees and costs.  The fifth factor weighs strongly in favor of
awarding fees.  The second factor, although of less importance, also weighs in favor.
Although the other three factors do not weigh in favor of an award, none of these
factors weigh against an award of fees.  Under these circumstances, the court finds
Glover is entitled to her reasonable attorney fees and costs.

II.    Amount of reasonable attorney fees

Having determined that Glover is entitled to her reasonable attorney fees
and costs under § 1132(g), the court next determines what amounts are reasonable.

17

See Gross, 763 F.3d at 86.  The court starts with attorney fees and considers costs in the next section.

To determine a reasonable fee award, the court applies the federal lodestar standard.  Id.  The "lodestar" is the product of the reasonable number of hours plaintiff's counsel spent on a matter multiplied by the reasonable hourly rate for counsel's services.  Cent. Pension Fund of the Int'l Union of Operating Eng's & Participating Emps. v. Ray Haluch Gravel Co., 745 F.3d 1, 5 (1st Cir. 2014).  To calculate the lodestar, the court must determine both the reasonable hourly rates of the plaintiff's attorneys and the number of hours they reasonably expended in the action.  Id.  "The lodestar may be further adjusted based on other considerations."  Id.  "Prominent among these considerations is the degree of a prevailing party's success."  Id.

Here, Glover is seeking to recover $49,121.25 for 280 hours of work by 5 individuals at her counsel's firm: Attorney Anne Rice, Hugh Rice (a retired Connecticut attorney who now works as a paralegal) and three other paralegals. The court first considers the reasonable hourly rates for each professional.

### A.   Reasonable hourly rates

The determination of an attorney's or other professional's reasonable hourly rate is "often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence."  Id. at 5.  "The fee-seeker must carry the burden of establishing the prevailing hourly rate (or schedule of rates) in

the community for the performance of similar legal services by comparably credentialled counsel." De Laire v. Voris, No. 21-CV-131-JD, 2022 WL 433068, at *3 (D.N.H. Jan. 14, 2022).  The party seeking fees must "establish the market rate for comparable services with 'satisfactory evidence.'"  Id. (quotations omitted).  The court considers each professional in turn.

Attorney Anne Rice billed at a rate of $325 an hour.  She has been an attorney in New Hampshire since 1997.  Her primary area of focus is employment law, and she has extensive experience representing employees.  The court finds that Attorney Anne Rice's hourly rate of $325 is appropriate given her experience.  See Wells Fargo Bank, N.A.  v. Moskoff, No. 17-CV-136-JL, 2021 WL 4798102, at *3 (D.N.H. Oct. 14, 2021) (finding hourly rate of $400 reasonable for experienced partners and senior attorneys in the New Hampshire and Boston markets); Valsoft Corp., Inc. v. Bacalan, No. 19-CV-672-JL, 2020 WL 9780743, at *4 (D.N.H. Aug. 4, 2020), report and recommendation adopted, No. 19-CV-672-JL, 2020 WL 9782530 (Sept. 14, 2020) (same).

Hugh Rice, a retired attorney, billed at a rate of $140 an hour.  Attorney Anne Rice represents that Hugh Rice was an attorney in Connecticut and has been a member of the Connecticut bar since 1986.  She represents that he works part-time as a paralegal in her office, and he was primarily responsible for conducting legal research and drafting in this case.  She represents that $140 is reasonable rate for an experienced paralegal in New Hampshire.  Given Hugh Rice's experience as an attorney (as well as the high quality of Glover's legal documents in this case), the

court finds this is an appropriate hourly rate.  See Moskoff, 2021 WL 4798102, at *3 (finding hourly rate of $150 appropriate for an experienced paralegal in New Hampshire).

Finally, paralegals Cynthia Pelletier, Susan Normandin, and Anara Kessler, all of whom have at least 15 years of experience as paralegals, billed at hourly rates of $140, $120, and $95, respectively.  The court finds these rates reasonable.  See id.

B.   Reasonable hours expended

The next step in the lodestar test is to determine the number of hours reasonably expended by Glover's attorneys, and exclude all hours that are excessive, redundant, or otherwise unnecessary.  See Ray Haluch Gravel Co., 745 F.3d at 5. Glover seeks to recover fees for 280 hours of legal work.  This includes:

- 186.75 hours for Hugh Rice;

- 56.5 hours for Attorney Anne Rice;

- 15.5 hours for Paralegal Pelletier;

- 4.25 hours for Paralegal Kessler; and

- 17 hours for Paralegal Normandin.

Hartford Life argues that these hours were unreasonable for two reasons: (1) Glover cannot recover any fees she expended during the administrative remand; and (2) most of the other hours were excessive and unreasonable.  The court addresses these arguments below.

i.   <u>Administrative remand</u>

Glover's legal team billed approximately $7,824 for 53.50 hours of work related to the administrative remand.  Hartford Life argues that Glover cannot recover these fees because Section 1132(g) only allows plaintiffs to recover fees in "any action" under the ERISA statute, and the administrative proceedings were not part of a legal action.  Although the First Circuit has yet to speak on the issue, every circuit that has done so has interpreted the phrase "any action" to exclude <u>pre-litigation</u> administrative procedures before the plan administrator, and has thus barred plaintiffs from recovering fees incurred at the administrative level. Colby v. Assurant Emp. Benefits, 635 F. Supp. 2d 88, 98 (D. Mass. 2009).  The issue here is whether Glover can recover fees she incurred during a voluntary administrative remand that occurred <u>after</u> she had already exhausted her administrative remedies and filed this lawsuit.

The Eleventh Circuit addressed an analogous situation in Kahane v. UNUM Life Ins. Co. of Am., 563 F.3d 1210 (11th Cir. 2009).  In <u>Kahane</u>, the plaintiff applied for long-term disability benefits to the defendant disability insurance company.  563 F.3d at 1212.  Although the defendant determined that the plaintiff was disabled, it found she was only eligible for benefits for a period of 24 months. <u>Id.</u>  The plaintiff appealed that determination, and the defendant upheld its original decision.  <u>Id.</u>  The plaintiff then sued the defendant in federal court, alleging that it improperly limited the term of disability benefits she was due under her plan.  <u>Id.</u> Prior to the date plaintiff filed her lawsuit, however, the defendant had reached a

settlement agreement with the U.S. Department of Labor that required the
defendant to offer claimants such as the plaintiff the opportunity to have their
claims revisited through a claim reassessment process.  Id.  During this process, the
defendant would be required to review both the original evidence and additional
evidence to determine whether the original claim was proper.  Id.  Participation in
the reassessment was voluntary.  Id.  Before the defendant filed an answer in her
federal lawsuit, the plaintiff voluntarily agreed to stay her lawsuit and have the
defendant reconsider her claim at the administrative level.  Id.

Upon reassessment, the defendant agreed to reinstate the plaintiff's benefits
retroactively.  Id.  This decision resolved the plaintiff's substantive ERISA claims
against the defendant.  Id.  The plaintiff then moved for attorney fees, seeking to
recover her fees for preparing and filing the complaint, advocating at the
administrative level, and litigating her entitlement to attorney fees.  Id.  The
district court determined that she was entitled to attorney fees for her work related
to her complaint and litigating her entitlement to attorney fees, but denied her fees
related to the claim reassessment process.  Id.

On appeal, the Eleventh Circuit upheld this ruling.  Id. at 1215.  It reasoned
that the claim reassessment process closely resembled pre-litigation administrative
proceedings.  Id.  The Eleventh Circuit noted that the claim reassessment process
would have been available to the plaintiff regardless of whether she filed a lawsuit.
Id. at 1214.  It further noted that the district court did not remand the case to the
defendant as a prerequisite for the judicial resolution of the case.  Id.  Rather, the

plaintiff voluntarily stayed her action and she essentially received a "redo" of the first administrative appeal without the involvement of the court.  Id.  Finally, the court noted that, while the plaintiff chose to be represented by counsel, she was not required to be.  Id.  For these reasons, the Eleventh Circuit concluded that the voluntary reassessment was not significantly different from pre-litigation procedures required by ERISA, and that fees during that process should therefore be excluded for the same reasons pre-litigation fees are excluded.  Id. at 1215.

By contrast, in Peterson v. Continental Casualty Company, 282 F.3d 112, 122 (2d Cir. 2002), the Second Circuit concluded that the plaintiff could recover fees related to post-filing remand procedures where the district court ordered a remand of the case.  Specifically, it concluded:

> [T]he text and legislative history [of § 1132(g)] indicate that once a court has assumed jurisdiction over a suit, all costs incurred may be shifted by a court to one party.  The fact that a court orders additional fact finding or proceedings to occur at the administrative level does not alter the fact that those proceedings are part of the "action" as defined by ERISA.

Id.  Based on this reasoning, the Second Circuit concluded that "[w]here the administrative proceedings are ordered by the district court and where that court retains jurisdiction over the action during the pendency of the administrative proceedings, . . . ERISA authorizes the award of associated costs."  Id.

In light of Kahane and Peterson, the court finds that Glover is not entitled to fees for her counsel's work during the administrative remand.  The facts of this case are slightly different from Kahane because, unlike the plaintiff in Kahane, Glover was not entitled to an administrative remand.  Nonetheless, as in Kahane, the

parties agreed to a stay of the litigation to engage in additional administrative procedures that occurred outside of the auspices of this court. This is distinguishable from <u>Peterson</u>, where the court ordered the plan administrator to reconsider the plaintiff's claim on remand. Here, by contrast, the remand was voluntary and was an alternative to resolving the case through litigation. For this reason, the court finds that the administrative remand was not part of this "action" and that the associated fees are not recoverable under § 1132(g). <u>See</u> <u>Clark v. First UNUM Life Ins. Co.</u>, No. 04 CIV. 9050 LTS DFE, 2009 WL 115031, at \*3 (S.D.N.Y. Apr. 29, 2009) (following <u>Kahane</u> where parties resolved their case through voluntary remand).

Accordingly, the court reduces Hugh Rice's hours by 26.50, Attorney Anne Rice's hours by 6.75, Paralegal Pelletier's hours by 1.25, Paralegal Normandin's hours by 15.50, and Paralegal Kessler's hours by 3.50.


        ii.   <u>Other Hours</u>

Excluding the hours spent during the administrative proceedings, Glover seeks to recover fees for 226.5 hours. In broad strokes, these hours were devoted to preparing, drafting, and filing the complaint, effecting service, researching the legal issues involved in a voluntary remand, negotiating a stay of the case, working on joint status updates during and after the stay, and negotiating and litigating Glover's entitlement to attorney fees after the parties resolved the substantive issues in this case.

Hartford Life argues that the number of hours Glover's counsel spent on this case is disproportionate to the amount of work involved and the amounts courts have awarded in comparable cases. The court agrees that some of counsel's work was either unnecessary under the circumstances of this case or that counsel spent an excessive number of hours relative to the work involved. The court reduces the award for the reasons explained below.

**Preparing the complaint.** Glover's counsel billed 56.25 hours for work related to preparing, drafting, and filing the complaint. Specifically, Hugh Rice spent approximately 39.75 hours conducting legal research, reviewing the administrative record, and drafting the complaint. Attorney Anne Rice spent an additional 9.75 hours conducting research, discussing the complaint with Hugh Rice, and reviewing and editing it. Paralegal Pelletier billed 9.5 hours to review and edit the complaint. Paralegal Normandin spent 1.5 hours compiling the administrative record.

This is significantly more time than counsel in comparable ERISA cases have spent preparing a complaint. In the comparable cases of Kahane and Clark, the parties settled their cases after a voluntary remand and then litigated entitlement to attorney fees. In Kahane, the Eleventh Circuit found 5.25 hours reasonable for all work prior to the administrative remand, which would have included drafting and filing the complaint. Kahane, 563 F.3d at 1215-16. In Clark the court found 18.5 hours reasonable for the non-attorney fee work, including drafting and filing

the complaint, evaluating the defendant's answer, client communications, and work related to the stay. Clark, 2009 WL 1150318, at *4.

Glover's counsel also spent more time drafting the complaint than courts have found reasonable for the entire litigation of ERISA default cases which involve not only drafting a complaint, but moving for default and default judgment. See, e.g., Gesualdi v. Fortunata Carting, Inc., 5 F. Supp. 3d 262, 281 (E.D.N.Y. 2014) ("Courts have found that 25 hours is a typical amount of time to spend on a straightforward ERISA default case.").

While the requirements of every case vary, Glover's counsel spent substantially longer on this task than attorneys in comparable cases. Moreover, while detailed and comprehensive, the bulk of the complaint is a straightforward recitation of Glover's claim history. There is no obvious reason it would have taken magnitudes longer time to prepare this complaint than most other ERISA cases.

In light of the awards in comparable cases, and after reviewing the complaint and the record in this case, the court finds 20 hours would have been a reasonable amount of time for an experienced ERISA attorney to spend preparing and drafting the complaint in this case. The court recognizes, however, that Hugh Rice does not purport to be an experienced ERISA attorney and bills at a paralegal rate. The court therefore finds it reasonable that Hugh Rice spent more time on this task than an attorney experienced in this subject area. Accordingly, Glover may recover the full 9.75 hours for Attorney Anne Rice's time on the complaint and 30 hours for

Hugh Rice's time.  The court thus subtracts 9.75 hours from Hugh Rice's billable hours.

The court further finds the 1.5 hours Paralegal Normandin spent compiling the administrative record was reasonable.  However, Glover has not shown Paralegal Pelletier's 9.5 hours reviewing and editing the complaint were reasonable. Hugh Rice and Attorney Anne Rice billed for reviewing and editing the complaint. It is not clear why a second paralegal had to review the complaint as well. Therefore, the court subtracts 9.5 hours from Paralegal Pelletier's time.

**Dismissing Dartmouth**.  Glover initially named her employer Dartmouth-Hitchcock as a defendant in this action.  Shortly after filing suit, Glover and Hartford Life filed a joint, two-page motion to dismiss Dartmouth on the grounds that Hartford Life was the only proper defendant under the Policy.  Attorney Anne Rice spent 2.25 hours and Hugh Rice spent 8.75 hours working on this issue.  It appears from the motion that Glover conceded she named an incorrect defendant in this case, and the parties resolved this issue by looking to the policy language in the Plan.  It is unreasonable to charge Hartford Life for Glover's decision to name an improper defendant.  For this reason, the court reduces Hugh Rice's recoverable hours by 8.75 and Attorney Anne Rice's hours by 2.25.

**Review of the Record and Statement of Facts**.  In August and September 2020, Hugh Rice spent 27.75 hours reviewing Hartford Life's claim file and comparing it to Glover's claim file and 4.25 hours drafting a joint statement of facts.  Reviewing claim files and preparing joint statements of fact would ordinarily

be an appropriate part of litigating an ERISA action.  However, in considering the reasonableness of fees, the court must consider the procedural posture of the case, including the parties' negotiations as to settlement.  See Gorbacheva v. Abbott Lab'ys Extended Disability Plan, 794 Fed. Appx. 590, 594 (9th Cir. 2019).

Here, considering the procedural posture of the case at the time, the court finds Hugh Rice's extensive review of the record and preparation of a statement of facts unreasonable.  Hugh Rice performed these activities after counsel prepared Glover's complaint, which already comprehensively detailed Glover's claim history.  Moreover, at the time, the parties were negotiating a stay and remand of the case, and counsel had already spent many hours researching the effects and scope of a stay.  It is not obvious why Glover's counsel would extensively review the record and prepare a joint statement of facts for use in litigation while the parties were negotiating a stay and voluntary remand.  And Glover's counsel has not provided any explanation.  Accordingly, the court cannot conclude these hours were reasonably spent.  The court reduces Hugh Rice's hours by 32.00.

**Scope of remand and attorney fees.**  Between May 28, 2020, and September 21, 2020, Hugh Rice spent 45.25 hours researching two issues: (1) the appropriate scope of review during an administrative remand; and (2) a voluntary remand's effects on Glover's entitlement to attorney fees.  Attorney Anne Rice spent an additional 18.75 researching these same issues.  In the summer of 2021, after the remand and the parties' resolution of their substantive dispute, Hugh Rice spent an additional 19.5 hours researching Glover's entitlement to attorney fees and

6.5 hours preparing a memorandum to Hartford Life outlining Glover's position to informally resolve the dispute.  For her part, Attorney Anne Rice spent 1.5 hours conducting additional research on attorney fees, 2.25 hours on communications with Hartford Life, and 9.75 hours drafting the motion for attorney fees.

With respect to the research on the scope of review during remand, the court finds the hours expended unreasonable.  In May 2020, Hartford Life offered to review its denial and consider Glover's complete medical records in rendering a new decision.  Given this offer, it is not clear why counsel continued to research this issue.  Nor has Glover explained—given the posture of the case—why these hours were necessary and reasonable.  The court therefore will not award fees for work related to this research.  See id.

In contrast, counsel's research and litigation of Glover's entitlement to attorney fees was reasonable because Glover was entitled to attorney fees.  That said, Glover's counsel spent an excessive amount of time on these tasks.  In Kahane, the Eleventh Circuit upheld the district court's ruling that 26 hours was an unreasonable amount of time to spend litigating attorney fees after resolution of an ERISA action through voluntary remand.  Kahane, 563 F.3d at 1216.  The Kahane court also upheld the district court's reduction of the recoverable hours on this issue to 13.5.  Id..  Likewise, in Clark, the district court denied the plaintiff's request to recover 65.45 billable hours for researching and drafting a motion for attorney fees.  Clark, 2009 WL 1150318, at *4.  The court instead allowed the plaintiff to recover

10 hours for associate attorney time and 5 hours for partner time on all matters related to the motion for attorney fees.  Id.

The court finds these cases persuasive on the reasonable number of hours counsel should spend litigating attorney fees in ERISA cases under facts similar to this case.  Given that Hugh Rice does not purport to be an experienced employment attorney, or charge accordingly, the court finds 20 hours to be reasonable for his time spent on attorney fees.  Cf. Clark, 2009 WL 1150318, at *4 (finding 10 hours reasonable for an experienced associate billing $300 an hour).  The court also finds 10 hours to be reasonable for Attorney Rice's time supplementing this research and drafting the motion for attorney fees.  Attorney Anne Rice's hours are reduced by 22.25 and Hugh Rice's hours are reduced by 51.25.

The court finds that counsel's hours were otherwise reasonably expended.


C. Lodestar

In light of the above, the court calculates the lodestar as follows:

| Professional | Hours | Rate | Total |
|---|---|---|---|
| Attorney Anne Rice | 25.25 | $325 | $8,206.25 |
| Hugh Rice | 58.5 | $140 | $8,190.00 |
| Cynthia Pelletier | 4.75 | $140 | $665.00 |
| Susan Normandin | 1.5 | $120 | $180.00 |
| Anara Kessler | .75 | $95 | $71.25 |
| Total | 90.5 | N/A | $ 17,312.50 |

The court finds this lodestar reasonable and awards Glover $17,312.50 in attorney fees.

III.   <u>Reasonable Costs</u>

In addition to attorney fees, § 1132(g) authorizes courts to award reasonable costs to either party in an ERISA action.  Here, Glover seeks to recover $581.31 in costs.  Of these costs, $174.31 are for obtaining medical records from Glover's providers during the administrative remand.  The court excludes these amounts for the same reasons it excluded attorney fees related to the administrative remand. <u>See</u> <u>supra</u> at 21-24.  The court thus awards Glover costs in the amount of $407.

**CONCLUSION**

For the foregoing reasons, the court grants Glover's motion for attorney fees and costs.  The court awards Glover $17,312.50 in attorney fees and $407.00 in costs.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

July 28, 2022

cc:    Counsel of Record